UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

C&N CORPORATION
d/b/a Door Peninsula Winery,

              Plaintiff,

     v.                                         Case No. 12-C-0257

GREGORY KANE and ILLINOIS
RIVER WINERY, INC.,

              Defendants.

**DECISION AND ORDER GRANTING PLAINTIFF'S MOTION TO COMPEL**

Plaintiff C&N Corporation, doing business as Door Peninsula Winery, brought this trademark infringement and unfair competition action against Gregory Kane and Illinois River Winery. Before me now is plaintiff's expedited non-dispositive motion to compel a response and production of documents associated with plaintiff's First Set of Interrogatories and First Request for Production of Documents and Things. Plaintiff alleges that defendants have failed to provide complete responses and have repeatedly delayed the proceedings. For the reasons detailed herein, plaintiff's motion to compel will be granted.

**BACKGROUND**

Plaintiff served its First Set of Interrogatories and First Request for Production of Documents and Things on defendant on the date the parties agreed to begin discovery, September 17, 2012. Defendants timely responded to the interrogatories on October 24, 2012 in accordance

with the parties' agreement to extend defendants' time to respond. However, plaintiff alleges that defendants' response was deficient. Plaintiff asserts that the interrogatory responses defendants provided were incomplete and evasive, and defendants failed to respond at all to the request for production of documents. Thereafter, the parties engaged in a series of communications with regard to discovery and a stipulated motion for a protective order, including a "meet and confer" conference pursuant to Civil Local Rule 37 on November 28, 2012. In accordance with the parties' agreement following the conference, defendants served supplemental interrogatory responses and produced documents on December 3, 2012. After detailing its grievances with the supplemental responses in a letter to defendants dated December 5, 2012, plaintiff filed the instant motion.

## LEGAL STANDARD

A party may "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense–including the existence, description, nature, custody, condition, and location of any documents or other tangible things. . . ." Fed. R. Civ. P. 26(b)(1). "For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action." *Id.* The scope of relevancy under Rule 26 is broad. "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id.*; *see also Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 350–51 (1978) (holding that relevant information "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter [sic] that could bear on, any issue that is or may be in the case").

2

A party may seek an order to compel discovery if an opposing party fails to respond to discovery requests or has provided evasive or incomplete responses. Fed. R. Civ. P. 37(a)(1)-(4). The party objecting to a discovery request bears the burden of showing why the request is improper. *Kodish v. Oakbrook Terrace Fire Protection Dist.*, 235 F.R.D. 447, 450 (N.D. Ill. 2006); *see also Sherman Park Cmty. Ass'n v. Wauwatosa Realty Co.*, 486 F. Supp. 838, 845 (E.D. Wis. 1980). In ruling on a discovery motion, courts consider "the totality of the circumstances, weighing the value of material sought against the burden of providing it, and taking into account society's interest in furthering the truth-seeking function in the particular case before the court." *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 681 (7th Cir. 2002) (internal quotation omitted).

The movant "must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." Fed. R. Civ. P. 37(a)(1). Thus, the party seeking discovery must complete several steps before court intervention is appropriate. The party seeking discovery must first direct its request to the opposing party. If the opposing party fails to provide the materials, the party must personally consult with the opposing party and attempt to resolve their differences. Civ. L. R. 37.1. If the party is still unable to obtain discovery, she may file a motion to compel discovery with the court pursuant to Fed. R. Civ. P. 37(a).

**ANALYSIS**

Plaintiff lodges several complaints regarding defendants' discovery responses. Plaintiff argues the December 3, 2012 supplemental interrogatory responses are deficient and largely nonresponsive or vague. Plaintiff also contends that defendants' December 3 responses to

3

plaintiff's requests for production were "equally egregious" and non-compliant. Specifically, plaintiff points out that defendants only produced a total of 27 pages of original documents, all of which were collected in 2008 as part of trademark opposition proceedings between the parties at the U.S. Patent and Trademark Office. Defendants produced no more recent documents and failed to comply with the parties' agreement as to the format of the documents produced.

Defendants contend that they have "responded in full or in part to the discovery requests" and to the extent they have only partially responded, it is because the requested information required examining records that were voluminous and therefore required extra time to process. (Defs.'s Br. at 1.) Thus, defendants do not dispute that its discovery responses to date have been incomplete, but assert that they have engaged in a good faith attempt to respond fully to the discovery requests and intend to supplement responses when "response information is located." (*Id.*)

Defendants also assert two specific objections to plaintiff's discovery requests. First, defendants contend that they have properly objected to Interrogatory Nos. 11, 12, and 13 as exceeding the number of interrogatories that may be served. They contend that although plaintiffs have numbered 13 interrogatories, some of the interrogatories included several discrete subparts which constitute separate interrogatories. *See* Fed. R. Civ. P. 33(a)(1); Civil L.R. 33(a)(1)(B). Although the definition of what constitutes a "subpart" is not clearly defined in the rules, generally, "interrogatory subparts are to be counted as one interrogatory if they are logically or factually subsumed within and necessarily related to the primary question." *Bell v. Woodward Governor Co.*, No. 03-C-50190, 2005 WL 3829134, at *1 (N.D. Ill. June 30, 2005) (quoting *Kendall v. GES Exposition Servs, Inc.*, 174 F.R.D. 684, 685 (D. Nev. 1997)); *see also, e.g., In re Netbank, Inc. Securities Litigation*, 259 F.R.D. 656, 679 (N.D. Ga. 2009); *Trevino v. ACB American, Inc.*, 232

4

F.R.D. 612, 614 (N.D. Cal. 2006); *Willingham v. Ashcroft*, 226 F.R.D. 57, 59 (D.D.C. 2005); 7 Moore's Federal Practice, § 33.30[2] (Matthew Bender 3d ed.).

In particular, defendants object to Interrogatory No. 11, which asks defendants to describe in detail all factual or legal bases supporting defendants' 27 affirmative defenses. Defendants contend that Interrogatory No. 11 therefore constitutes 27 separate interrogatories. Defendants also contend that such an interrogatory constitutes a request for opposing counsel's legal theories and is objectionable on that basis as well.

The latter objection, which is also asserted to other Interrogatories, is poorly taken. Rule 33 expressly allows interrogatories, called "contention interrogatories," that "asks for an opinion or contention that relates to fact or the application of law to fact." Fed. R. Civ. P. 33(a)(2). The fact that counsel would even offer such an objection suggests an intent to evade the obligation to properly respond to legitimate discovery requests. The objection that the interrogatory constitutes 27 separate interrogatories and thereby brings the total number of interrogatories plaintiff has propounded over the limit is a closer question.

The Federal Rules Advisory Committee cautioned that parties should be allowed to evade the presumptive limitation of 25 interrogatories "through the device of joining as 'subparts' questions that seek information about discrete separate subjects." Advisory Committee Notes, 146 F.R.D. 401, 676 (1993). "There is no bright-line test on how to count parts of interrogatories." *United States ex rel. Liotine v. CDW–Government, Inc.*, No. 05–033–DRH, 2010 WL 2025363, at *1 (S.D. Ill. May 20, 2010). Recognizing that the issue can be difficult, Wright & Miller suggest that the test for whether an interrogatory containing subparts should be treated as a single interrogatory is whether the subparts all have a common theme:

5

> The application of the numerical limitation on interrogatories can present problems in some cases, given the direction that "discrete subparts" be counted as separate interrogatories for purposes of the 25–question rule. The Advisory Committee provided some insight on this problem by explaining that "a question asking about communications of a particular type should be treated as a single interrogatory even though it requests that the times, place, persons present, and contents be stated separately for each such communication." Thus, it would appear that an interrogatory containing subparts directed at eliciting details concerning a common theme should be considered a single question, although the breadth of the area inquired about may be disputable. On the other hand, an interrogatory with subparts inquiring into discrete areas is likely to be counted as more than one for purposes of the limitation.

Wright, Miller, & Marcus, FEDERAL PRACTICE AND PROCEDURE, § 2168.1, pp. 39-40 (West 2010).

Is an interrogatory that inquires into the factual and legal basis for a defendant's twenty-seven affirmative defenses one interrogatory or twenty-seven? It appears that not all courts agree. Compare *Bell*, 2005 WL 3829134, at *2 (holding plaintiffs' interrogatory seeking information about each of defendant's 21 affirmative defenses "seeks to combine twenty-one questions into one"); and *Jacks v. Directsat USA, LLC*, No. 10-1707, 2011 WL 382858, *2 (N.D. Ill.) (treating interrogatory inquiring into affirmative defenses as involving common theme). To the extent that each affirmative defense reflects a separate theory of defense, it seems that a request for the factual and legal basis for such a defense should be viewed as a separate interrogatory. But this does not mean that a defendant should not be ordered to answer it anyway. Contention interrogatories inquiring into the basis of affirmative defenses generally advance the orderly pretrial development of the case. They allow the plaintiff to determine quickly which affirmative defenses may have merit and need to be taken seriously and which are mere place-keepers intended only to preserve the defendant's ability to pursue the defense if facts that support it turn up later without fear of waiver and need to amend. The use of such a discovery technique seems particularly appropriate in a case such as this

6

where the defendant has thrown in every affirmative defense but the proverbial kitchen sink. If the defendants truly believe they have twenty-seven affirmative defenses to this action, they owe plaintiff an explanation beyond the bare assertion of it in their responsive pleading. Defendants are therefore directed to answer Interrogatory 11 in full.

Defendants also object to Request No. 3 to the extent that it requires disclosure of the recipes for defendants' wine products. Request No. 3 asks defendants to produce all documents "relating to the production, development and/or testing of goods produced and/or sold by IRW under the HALLOWINE name." Defendants state that disclosure of recipes should be protected because the recipes constitute trade secrets. I agree with defendants that such disclosure is not relevant and is not likely to lead to the discovery of admissible evidence. Plaintiff's cause of action is based on defendants' alleged infringing use of the Hallowine mark. The labels or other products bearing the Hallowine mark–rather than the wines themselves–are at issue. Insofar as plaintiff's request seeks information related to the defendants' wine recipes, such information appears irrelevant. Accordingly, only to the extent that Request No. 3 includes production of defendants' recipes for its product, plaintiff's request is overbroad. In all other respects, defendants are required to respond to Request No. 3.

Defendants also contend that contrary to plaintiff's representation, they have already fully complied with Request for Production No. 3. Defendants state that they have offered to make available for inspection the records which will enable plaintiff to obtain for itself the information requested, as permitted by the Federal Rules of Civil Procedure.[1] In answering interrogatories,

---

[1] Defendants cite Rule 37 and two federal district court cases dating to the 1970s that refer to Rule 33 as it existed prior to significant amendments in 1993.

7

parties have the option of making available for inspection business records if the burden of deriving or ascertaining the answer will be substantially the same for either party. Fed. R. Civ. P. 33(d). The responding party may specify the records to be reviewed with sufficient detail to enable the interrogating party to locate and identify the documents, and must give the interrogating party a reasonable opportunity to examine and audit the records and make copies. *Id.* Under Rule 34, parties may likewise provide for inspection of requested documents. Fed. R. Civ. P. 34(a)(1) (permitting a party to serve a request to produce and permit the requesting party or its representative to inspect, copy, test, or sample documents or things).

Thus, making records available for inspection may be a permissible response to an interrogatory or a request for production. However, given that defendants have repeatedly stated that their business records are in disarray and require searches equivalent to finding "a needle in a haystack," it is doubtful that ascertaining an answer will be substantially the same for both parties. Parties may not simply dump disorganized documents on their opponents in an effort to evade their discovery obligations. *See, e.g., Rothman v. Emory University*, 123 F.3d 446, 445 (7th Cir. 1997). Here, defendants are more familiar with the documents than plaintiff (the documents at issue are, after all, defendants' business records), and defendants have already undertaken to inspect and examine the allegedly voluminous and disorganized records. Therefore, it appears defendants are in a better position to identify and disclose documents to plaintiff. Taking into consideration these concerns, defendants may respond in accordance with the Federal Rules of Civil Procedure, and may determine that it is appropriate to open their books and documents to plaintiff for inspection. However, defendants should take care to provide complete responses in crafting their supplemental responses in compliance with this Order, as they risk sanctions for further delay.

To the extent not already discussed, defendants' blanket objections and repeated chorus that their incomplete responses are excusable because they must sort through "voluminous disorganized records" are unreasonable. Defendants seem to suggest that because they are a small business and do not maintain readily-available, organized business records that they need not comply with discovery deadlines. While these justifications may be sincere, they do not excuse defendants from complying with discovery requests. The discovery process undoubtedly constitutes a burden and a disruption on any business involved in litigation, and defendants are no different than the countless other parties appearing in federal court.

Moreover, defendants participated in and agreed to the Joint Rule 26(f) report and scheduling order and raised no concerns about the apparent disarray of their business records causing delays in the discovery process. Additionally, despite several attempts by plaintiffs to seek adequate discovery responses, defendants have made no attempt to request more time or to otherwise justify their difficulties in answering plaintiff's requests. Defendants' objections and excuses included in their December 3, 2012 supplemental responses were voiced more than one month after the responses were originally due and nearly three months after plaintiff's propounded the requests.

Plaintiff primarily seeks documents, dates, and information relating to the defendants' production and sale of products using the Hallowine name. Plaintiff asks for products developed, produced, marketed, or offered for sale by defendants using the Hallowine name (Interrog. No. 1; RFP Nos.2-3, 7-11), the markets and channels of distribution through which such Hallowine products are sold (Interrog. No. 2), the total volume of Hallowine goods sold (Interrog. No. 4; RFP Nos. 22, 28), the locations of Hallowine sales or offers for sale and the volume of sales in each

9

location (Interrog Nos. 5-6; RFP No. 22), and the revenues generated by sales of Hallowine goods (RFP Nos. 23-27). Plaintiff requests the dates of development, production, and offers for sale of defendants' Hallowine products. (Interrog. Nos. 1, 3.) Plaintiff also seeks information related to defendants' awareness of the use of the Hallowine name, including: known third-party usage (Interrog. No. 7; RFP Nos. 13, 29), trademark searches or registration applications (Interrog. No. 8; RFP Nos. 6, 16), and known name confusion (Interrog. No. 9; RFP Nos. 12, 14). In addition, plaintiff asks for information concerning steps taken by defendants to avoid infringement (Interrog. No. 10; RFP Nos. 4, 17-20, 30) and documents related to the design and labeling of Hallowine products (RFP Nos. 5, 9).

These discovery requests are relevant to plaintiff's claims and seek information that appears reasonably calculated to lead to the discovery of admissible evidence. Fed. R. Civ. P. 26(b)(1). Plaintiff's complaint alleges that plaintiff owns three Federal Trademark Registrations using the Hallowine name and that defendants have infringed on plaintiff's mark by offering for sale a substantially similar product using the Hallowine name. (*See* Compl. ¶¶ 20, 32.) Plaintiff contends such infringing use of the mark is likely to cause confusion, and defendants have offered their Hallowine product for sale with the intention of deceiving and misleading customers, the relevant industry, and the public. (*See* Compl. ¶¶ 26-27, 37.) Moreover, plaintiff has only asked for information relating to defendants' products using the Hallowine name or their knowledge of others' use of the name. As such, and contrary to defendants' objections, plaintiff's requests are not overly broad or unduly burdensome. Rather, plaintiff's requests seek information relevant to its claims and the requests are largely tailored to information likely to be kept in the regular course of defendants' business.

10

As a result, defendants are required to respond in full to plaintiff's First Set of Interrogatories and First Request for Production of Documents and Things. Thus far, defendants have filed incomplete responses. In particular, defendants' responses to plaintiff's requests for production are deficient, because defendants have only disclosed documents related to the 2008 trademark opposition proceedings. Additionally, in response to many of plaintiff's interrogatories, defendants have simply referred to their incomplete responses to the requests for production. As defendants have agreed that their discovery responses are incomplete, they must now respond fully to plaintiff's proper requests.

## CONCLUSION

Accordingly, and for the foregoing reasons, plaintiff's motion to compel will be **GRANTED**. Defendants Gregory Kane and Illinois River Winery shall serve amended responses to plaintiff's First Set of Interrogatories within ten days of this Order and provide complete responses. Defendants also shall produce all documents in their possession, custody, or control that are responsive to plaintiff's First Request for Production of Documents and Things within ten days of this Order.

Dated this __7th__ day of January, 2013.

s/ William C. Griesbach
William C. Griesbach, Chief Judge
United States District Judge
