UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

C&N CORPORATION d/b/a
DOOR PENINSULA WINERY,

        Plaintiff,

   v.                                       Case No. 12-C-0257

GREGORY KANE and
ILLINOIS RIVER WINERY, INC.,

        Defendants.

---

**DECISION AND ORDER GRANTING PLAINTIFF'S MOTION
FOR PARTIAL SUMMARY JUDGMENT**

---

Plaintiff C&N Corporation, doing business as Door Peninsula Winery (DPW), filed this action alleging Defendants Illinois River Winery, Inc. (IRW) and its owner, Gregory Kane, are infringing on DPW's rights by selling a spiced apple wine called "Hallowine." DPW contends it has protectable rights in the HALLOWINE and DOOR COUNTY HALLOWINE trademarks, and that Defendants' sales of their Hallowine product in Illinois and Wisconsin causes customer confusion. DPW brought claims for (1) federal trademark infringement and unfair competition in violation of 15 U.S.C. § 1114; (2) false designation of origin and unfair competition pursuant to § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); and (3) common law trademark infringement and unfair competition. Before me now is DPW's motion for partial summary judgment. DPW seeks judgment in its favor as to all of Defendants' affirmative defenses, as well as its claims for trademark infringement of its rights in the HALLOWINE word mark under § 1125(a) and state

common law. DPW also seeks summary judgment that it is entitled to recover Defendants' profits for their infringing sales in the amount of $508,864.26. For the reasons that follow, DPW's motion will be granted.

**BACKGROUND**

The basic facts of this case are largely undisputed. DPW, a winery located in Door County, Wisconsin, sells a spiced apple wine called Hallowine. They received label approval from the U.S. Bureau of Alcohol, Tobacco, and Firearms for Hallowine in 1996 and began selling and distributing its Hallowine product in both Wisconsin and Illinois in 1998. Defendant Illinois River Winery began selling wine in 2003, and some time thereafter, also offered for sale a spiced apple wine under the name Hallowine. On March 20, 2006, Defendants submitted an application to the U.S. Patent and Trademark Office for federal registration of the word mark HALLOWINE. Upon learning of the application, DPW initiated an opposition proceeding on December 21, 2006.

The PTO Trademark Trial and Appeal Board (TTAB) issued a decision in the opposition proceeding on October 21, 2008 after receiving summary judgment evidence and briefing. The TTAB granted DPW's motion for summary judgment, sustaining the opposition and refusing IRW's application for registration. In so deciding, the TTAB found no genuine dispute that DPW had priority in the HALLOWINE word mark and that there was a likelihood of confusion between DPW's use of the HALLOWINE mark on its wine product and the defendants' use of the same mark on their wine product. Defendants did not appeal the TTAB ruling.

Following the October 2008 TTAB ruling, DPW sought federal registration of the HALLOWINE word mark. However, it abandoned its application for federal registration on January 18, 2011 after becoming involved in an opposition proceeding with another winery. DPW

2

subsequently applied for and obtained federal registration of related design plus words, letters, and/or numbers marks in March 2011. Thereafter, DPW filed the present lawsuit against Kane and IRW on March 16, 2012.

**LEGAL STANDARD**

A motion for summary judgment should be granted when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "Material" means that the factual dispute must be outcome-determinative under governing law. *Contreras v. City of Chicago*, 119 F.3d 1286, 1291 (7th Cir. 1997). A "genuine" issue of material fact requires specific and sufficient evidence that, if believed by a jury, would actually support a verdict in the non-movant's favor. Fed. R. Civ. P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The moving party has the burden of showing there are no facts to support the non-moving party's claim. *Celotex*, 477 U.S. at 322. In determining whether to grant a motion for summary judgment, the court should consider the evidence presented in the light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255. When the record, taken as a whole, could not lead a rational jury to find for the non-moving party, there is no genuine issue and therefore no reason to go to trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

**ANALYSIS**

As an initial matter, Defendants appear to have dispensed with several procedural requirements in conducting this litigation. To begin with, in support of their brief in opposition to DPW's motion for summary judgment, Defendants filed a Statement of Proposed Material Facts on April 17, 2013. Defendants' proposed findings of fact repeatedly cite to the April 9, 2013

deposition of Robert Pollman, DPW's designated Rule 30(b)(6) corporate representative. Along with the statement of facts, Defendants filed an affidavit of Margery Tibbetts-Wakefield, swearing, among other things, that a copy of the Pollman deposition transcript was attached and filed as an exhibit to the affidavit.

However, the Pollman deposition was not filed in the record. DPW pointed out this fact in its reply brief filed May 1, 2013. Several days later, on May 8, 2013, Defendants filed a motion to seal, moving the Court to enter an "order sealing the deposition transcript of Robert Pollman submitted to the Court by Defendants" and representing that the "deposition transcript was attempted to be filed with Defendant's [sic] Summary Judgment opposition materials and was unsuccessful." (ECF No. 44.) The deposition was still not filed in the record, sealed or not. In an order dated May 14, 2013, the Court ordered that the defendants show cause within seven days why the Pollman deposition should be included in the record. Counsel for the defendants then represented in a hearing held May 17, 2013 that due to technical errors, Defendants mistakenly thought the deposition had been properly filed under seal. The Court stated it would accept the late filing of the deposition, and ordered DPW to designate portions of the deposition that should be redacted or filed under seal within 10 days from the date of the hearing. The deposition transcript still not filed, DPW filed a response to the Court's May 17 order on May 28, 2013, explaining, essentially, that it had nothing to respond to as it could not designate portions of a deposition that did not exist in the record. Without explanation, Defendants neglected to correct its errors or to file the Pollman deposition in the record until May 31, 2013.

In addition, Defendants failed to respond to DPW's Statement of Proposed Material Facts. A party asserting a fact is genuinely disputed must support the assertion by "citing to particular parts

4

of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c). If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may issue an appropriate order, including considering the facts undisputed for purposes of the motion. Civil L.R. 56(2)(B)(i) also specifically requires that parties opposing a summary judgment motion provide "a concise response to the moving party's statement of facts" containing "a reproduction of each numbered paragraph in the moving party's statement of facts followed by a response to each paragraph." Instead of complying with the rules, Defendants filed their own statement of facts, which relied primarily on the Pollman deposition. As a result, DPW argued in its reply brief and in its response to Defendants' proposed statement of facts that DPW's uncontroverted statements should be deemed admitted for purposes of deciding its summary judgment motion.

Given Defendants' failure to comply with the rules of procedure and this Court's orders, it is appropriate to strike the Pollman deposition. The Court agreed to overlook Defendants' initial error in failing to file the deposition, their later attempt to do so by filing a motion to seal a week after DPW brought the issue to their attention in its reply brief, and their failure to file the deposition with the motion to seal in accordance with General L.R. 79(d), and agreed to allow the late filing of the deposition. Yet, despite the fact that Defendants were given ample opportunity to properly submit the deposition, they failed to correct their error until almost two months after they originally represented the deposition was filed, and more than 10 days after the Court ordered that the deposition be filed. Such neglect is inexcusable at this point, and as a result, the Court will

5

strike the deposition filed at docket number 49. In any event, as will be explained below, whether the deposition is considered or not makes no difference to the result here.

In addition, the Court considers DPW's Statement of Proposed Material Facts (ECF No. 29-1) as true for purposes of deciding this motion because they are uncontested. District courts are entitled to expect strict compliance with the Federal Rules of Civil Procedure and with the local rules. *Cichon v. Exelon Generation Co., L.L.C.*, 401 F.3d 803, 809-810 (7th Cir. 2005); *see also Fed. Trade Comm'n v. Bay Area Bus. Council, Inc.*, 423 F.3d 627, 633 (7th Cir. 2005) ("Because of the important function local rules . . . serve in organizing the evidence and identifying disputed facts, we have consistently upheld the district court's discretion to require strict compliance with those rules."). Civ. L. R. 56 prescribes the acceptable means by which a party may dispute the other party's facts and by which it may present additional facts. The rule is not discretionary, and "it is not the parties prerogative to determine when a rule can be satisfied by other than what the rule requires." *Midwest Imports, Ltd. v. Coval*, 71 F.3d 1311, 1317 (7th Cir. 1995).

Perhaps Defendants failed to respond to DPW's statement of proposed facts because they do not appear to take issue with the facts as represented by DPW; rather, they point to different facts that they contend defeat DPW's motion for summary judgment. Therefore, the Court will also consider Defendants' statement of facts as appropriate and to the extent that they do not rely on the Pollman deposition. As a final note, although Defendants filed their Statement of Proposed Material Facts (ECF No. 39) with the word "Sealed" in the caption, they did not file a motion to seal or otherwise follow General L.R. 79(d) in filing the document. Therefore, to the extent that Defendants attempted to file the document under seal, such attempt is in error and the document is to remain unsealed. *See* Gen. L.R. 79(d)(3) ("[T]he Court will consider all documents to have been

filed publicly unless they are accompanied by a separate motion requesting that the documents, or portions thereof, be sealed by the Court.").

### A. Defendants' Affirmative Defenses

DPW argues it is entitled to summary judgment on each of the 27 affirmative defenses listed in the defendants' answer because Defendants have failed to identify sufficient evidence to meet their burden of proof on any of them. Defendants respond that sufficient evidence supports each affirmative defense, "especially with regard to laches, estoppel, failure to mitigate and the fact that there is not a likelihood of confusion between DPW's current mark and IRW's use of the name 'HALLOWINE'." (Opp'n Br. 1-2, ECF No. 36.) They also mention in passing that DPW's claims are barred by the doctrines of waiver, acquiescence, and unclean hands. (Opp'n Br. 12, ECF No. 36.) Accordingly, although Defendants pled no less than 27 affirmative defenses, they have apparently narrowed that number down to the approximately seven they mention in their Opposition Brief. They also now argue an additional "abandonment" affirmative defense that was never pled in their answer. (*See* Opp'n Br. 17, ECF No. 36.) In any event, they only attempt to support two affirmative defenses: laches and abandonment.

Defendants' laches defense is predicated entirely upon the April 9, 2013 Pollman deposition. Aside from stating amorphously that DPW "failed to seek trademark protection for over ten years" they failed to mention laches at all in their response to DPW's contention interrogatory asking for the factual bases supporting each affirmative defense. This is because, Defendants now claim, they first learned of the facts supporting the laches defense when deposing Pollman. Specifically, they point to Pollman's testimony that DPW did not send a cease and desist letter to the defendants even though Pollman was aware that IRW continued to market and sell a wine called Hallowine even

after the 2008 TTAB decision. They also claim that Pollman's testimony established that DPW was aware that IRW's infringement caused customer confusion, but DPW did nothing to prohibit Defendants from using the HALLOWINE mark until filing suit in 2012. Defendants argue they have been prejudiced by DPW's delay because they relied on DPW's silence and continued to market and sell their wine. Defendants do not explain why any of these facts were new to them–surely, they knew that they had not received a cease-and-desist letter and that they had not been sued by DPW without having to ask Pollman about it. Likewise, to the extent Defendants claim they have been unduly prejudiced by any delay, they alone would know how they have been harmed. Thus, these facts should have all been disclosed in the defendants' interrogatory response, and their failure to include them is reason enough to strike the affirmative defense.

But setting all this aside, Defendants' laches defense fundamentally lacks substance. Laches is an equitable remedy which provides a limitation on damages. *Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 822 (1999) ("The Lanham Act specifically contemplates that both injunctive relief and awards of damages for violations of 15 U.S.C. § 1125 shall be subject to the principles of equity, which include the doctrine of laches."). The doctrine is "derived from the maxim that those who sleep on their rights, lose them." *Chattanoga Mfg., Inc. v. Nike, Inc.*, 301 F.3d 789, 792 (7th Cir. 2002) (quoting *Hot Wax*, 191 F.3d at 820). For laches to apply in a trademark infringement case, the defendant must show that (1) the plaintiff had knowledge of the defendant's use of an allegedly infringing mark; (2) the plaintiff inexcusably delayed in taking action with respect to the defendant's use; and (3) the defendant would be prejudiced by allowing the plaintiff to assert its rights at this time. *Id.* at 792-93. Defendants have the burden of identifying evidence upon which a jury could find in its favor on each element of their affirmative defenses. *Anderson*, 477 U.S. at

8

248; *Celotex*, 477 U.S. at 322-23. "Summary judgment is not a dress rehearsal or practice run; it is the put up or shut up moment in the lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005) (internal quotation marks and citations omitted).

Defendants present little evidence of inexcusable delay and virtually no support for a finding that DPW was sleeping on its rights. To the contrary, DPW has affirmatively sought protection for its rights related to its Hallowine product, including instituting the opposition proceeding in 2008, and following that decision, seeking federal trademark registration on several related marks between 2008 and 2012. More importantly, Defendants show no prejudice, and the equities decidedly are not in their favor on this point. Defendants claim that they have been prejudiced by DPW's alleged delay in bringing suit because they "continued to market the wine and increase . . . sales and production thereof." (Opp'n Br. 17, ECF No. 36.) But Defendants were on notice that DPW had a protectable trademark in Wisconsin and Illinois after the TTAB ruling, and yet made no changes to their Hallowine product's name, to its label, or to the channels through which it was marketed or sold. They rather boldly continued on with uninterrupted sales of Hallowine, apparently hoping no infringement action was filed. (*See* Defs. Statement of Proposed Material Facts ¶ 9, ECF No. 39.) Only "where the delay is so prolonged and inexcusable that it amounts to a virtual abandonment of the right by the plaintiff for a long period of time that the balance of the equities would favor the knowing infringer." *Tisch Hotels, Inc. v. Americana Inn, Inc.*, 350 F.2d 609, 615 (7th Cir. 1965). There was no delay so prolonged or inexcusable to justify limiting DPW's relief or to entitle Defendants to protection for a gamble that did not pay off.

9

Defendants' abandonment defense cannot survive summary judgment either. Even if Defendants had properly raised an abandonment defense–which they did not–they have done nothing to support it, as they only argue that DPW voluntarily abandoned its attempt to obtain federal registration of the mark. But "the fact that [a trademark] application has been expressly abandoned shall not . . . affect any rights that the applicant may have in the mark in the abandoned application." 37 C.F.R. § 2.68; *accord. Volkswagenwerk Aktiengesellschaft v. Wheeler*, 814 F.2d 812, 816 (1st Cir. 1987) ("Within the PTO, the voluntary withdrawal of an application has no future relevance."). In order to establish abandonment as an affirmative defense, a defendant must prove that "its use has been discontinued with intent not to resume such use." *Sands, Taylor & Wood Co. v. Quaker Oats Co.*, 978 F.2d 947, 955 (7th Cir. 1992) (quoting 15 U.S.C. § 1127). Whether a mark is abandoned thus depends on how the mark is used, rather than whether it is registered. *See id.* at 954-55. Aside from their mistaken argument that because DPW abandoned its application for federal trademark registration, it has abandoned all rights in the mark, Defendants only point to the fact that DPW has sought federal registration for a new DOOR COUNTY HALLOWINE stylized mark. But they do not explain or support how this fact necessarily means that DPW has discontinued use of its HALLOWINE word mark or that even if it did, that it intends to not resume use of the mark.

In sum, Defendants have failed to offer sufficient evidence to allow a reasonable jury to find in their favor on any of their affirmative defenses. Moreover, many of their defenses are equitable defenses to which principles of justice and equity do not counsel a finding in their favor. Accordingly, DPW's motion for summary judgment dismissing all of Defendants' affirmative defenses will be granted.

10

**B.  Trademark Infringement**

DPW also seeks summary judgment on its trademark infringement claim relating to its HALLOWINE word mark, brought under both state common law and the Lanham Act, 15 U.S.C. § 1125(a). In order to prevail on its claim, DPW must demonstrate that it has a protectable trademark and that the Defendants' use of the HALLOWINE mark is likely to cause confusion among consumers. *Promatek Industs., Ltd. v. Equitrac Corp.*, 300 F.3d 808, 811 (7th Cir. 2002). DPW argues that the doctrine of collateral estoppel bars relitigation of the issue because the October 2008 TTAB opposition proceeding in large part already decided these same two questions in DPW's favor.

In particular, DPW argues that Defendants are collaterally estopped from relitigating whether there is a likelihood of confusion between IRW's use of the HALLOWINE word mark and DPW's use of the mark, and whether DPW has established priority in the mark, at least as to sales in Wisconsin and Illinois. The TTAB order granted summary judgment in DPW's favor on both issues. Collateral estoppel will apply if: (1) the issue sought to be precluded is the same as that involved in a prior litigation; (2) the issue was actually litigated; (3) the determination of the issue was essential to the final judgment; and (4) the party against whom estoppel is invoked was fully represented in the prior action. *Matrix IV, Inc. Am. Nat'l Bank & Trust Co.*, 649 F.3d 539, 547 (7th Cir. 2011) (citing *H–D Mich., Inc. v. Top Quality Serv., Inc.*, 496 F.3d 755, 760 (7th Cir. 2007)). Courts give preclusive effect to the final determinations of an administrative agency so long as the agency was "acting in a judicial capacity and resolves disputed issues of fact properly before it where the parties have had an adequate opportunity to litigate." *Alvear-Velez v. Mukasey*, 540 F.3d 672, 677 (7th Cir. 2008) (quoting *United States v. Utah Constr. & Mining Co.*, 384 U.S. 394, 422

11

(1966)). The TTAB was acting in a judicial capacity because "[a]n opposition proceeding *is* an adversary proceeding." *EZ Loader Boat Trailers, Inc. v. Cox Trailers, Inc.*, 746 F.2d 375, 378 (7th Cir. 1984) (emphasis in original).

Here, Defendants have only argued that the issues sought to be precluded are not the same issues involved in the prior proceeding. Defendants argue that the TTAB decision did not address infringement of DPW's "new revised and stylized marks" registered on August 2, 2011, and therefore, the TTAB ruling has no preclusive effect on the issues in this litigation. Rather, they contend that the TTAB decision only addressed the likelihood of confusion between Defendants' use of the HALLOWINE word mark and DPW's use of its "old mark," which they contend DPW abandoned on January 18, 2011.

But Defendants fundamentally misconstrue the law, and their argument is without merit. The Lanham Act was intended to make 'actionable the deceptive and misleading use of marks' and 'to protect persons engaged in . . . commerce against unfair competition.'" *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 767-68 (1992) (citing § 45, as amended 15 U.S.C. § 1127). Both unregistered and registered marks may be protected. Unregistered marks are protectable under § 1125(a), as "it is common ground that § 43(a) [as amended, 15 U.S.C. § 1125(a)] protects qualifying unregistered trademarks and that the general principles qualifying a mark for registration under § 2 of the Lanham Act are for the most part applicable in determining whether an unregistered mark is entitled to protection under § 43(a)." *Id.* at 768. Thus, it has long been settled that federal registration of a mark "has no effect on the domestic common-law rights of the person whose trademark is registered." *Kellogg Co. v. Nat'l Biscuit Co.*, 305 U.S. 111, 117, n.3 (1938). "[T]rademark rights derive from the use of a mark in commerce and not from mere registration of

12

the mark." *Sands*, 978 F.2d at 954. Moreover, as discussed above, the fact that a federal trademark application has been abandoned has no affect on the common law rights in the mark. 37 C.F.R. § 2.68.

Yet, Defendants' response relies almost entirely on the single flawed contention that DPW abandoned its rights in the "old" word mark at issue in the TTAB proceeding, and only has rights in its "new" *registered* marks. DPW does not dispute that its registered marks were not at issue in the TTAB proceedings–those registered marks relate to DPW's count for infringement of federally-registered "DOOR COUNTY HALLOWINE" trademarks under 15 U.S.C. § 1114 (as alleged in Count I of the Complaint). DPW has not moved for summary judgment with respect to this claim, and explicitly stated as much in its opening brief. (DPW Br. 2, ECF No. 28) ("DPW's Complaint includes a count for infringement of its registered trademarks under 15 U.S.C. § 1114. These marks, which include stylized text and graphics, *were not at issue in the prior TTAB proceeding, and DPW is not seeking summary judgment of infringement of these registered marks*.") (emphasis added).

Defendants have made no other challenge to DPW's contention that the TTAB decision established priority in the HALLOWINE word mark in Wisconsin and Illinois, and that IRW's continued use of the HALLOWINE mark creates a likelihood of confusion. The TTAB ruling is entitled to preclusive effect as to these two issues. The TTAB opposition proceeding was an adversary proceeding and the agency was acting in a judicial capacity. The parties litigated the issues of priority and likelihood of confusion, conducting discovery which included propounding requests for admissions, requests for production of documents, and written interrogatories. The issues were fully briefed, and the TTAB applied the same summary judgment standard that applies here. In addition, the same two issues were essential to the TTAB's ruling in that they formed the

13

basis for the TTAB's denial of IRW's trademark registration application. Finally, the parties were fully represented and had an adequate opportunity to present their positions, as evidenced by the discovery and motion practice before the administrative agency. Accordingly, DPW has established both that it has priority in the HALLOWINE word mark and that IRW's use of the mark creates a likelihood of confusion among customers in Wisconsin and Illinois.

In ruling on the likelihood of confusion, the TTAB found that the marks were identical, the goods were similar, and the goods travel in similar channels of trade to the same classes of purchasers. (*See* Liro Decl. Ex. F 7-9, ECF No. 30-6.) The TTAB also rejected Defendants' argument that consumers of its Hallowine product were careful, discriminating, and sophisticated purchasers such that they were unlikely to be confused by the similarities between the parties' respective Hallowine products. The TTAB also established DPW's ownership and priority in the HALLOWINE mark, ruling that the undisputed evidence established that DPW had continuous use of the mark in Wisconsin and Illinois since 1998. (*See also* DPW Statement of Proposed Material Facts ¶ 3, ECF No. 29-1.) The TTAB also ruled that IRW had not even sold wine before 2003, and had not established use of the mark before August 2005. (*See also* Liro Decl. Ex. B, Defs.' Interrog. Resp. at 5, ECF No. 30-2.) .

In addition, DPW has established the validity of the HALLOWINE mark as a protectable mark. DPW contends that although the validity of the mark was presumed in the 2008 TTAB proceeding, the undisputed facts establish that HALLOWINE is valid as a suggestive mark. Marks that are fanciful, arbitrary, or suggestive are considered inherently distinctive and fully protected from the time of their adoption. *Two Pesos*, 505 U.S. at 768-69. A term is suggestive if it "suggests rather than describes an ingredient or characteristic of the goods and requires the observer or listener

14

to use imagination and perception to determine the nature of the goods." *G. Heilman Brewing Co. v. Anheuser-Busch, Inc.*, 873 F.2d 985 (7th Cir. 1989) (quoting *Miller Brewing Co. v. G. Heilman Brewing Co.*, 561 F.2d 75, 79 (7th Cir. 1977)). A suggestive term will be protected without proof of secondary meaning. *Id.* As applied here, "HALLOWINE" is a suggestive mark because it does not directly describe the product or its ingredients. Rather, it is a play on words, combining "Halloween" and "wine" in a way that only alludes to its meaning. In this way, it suggests, as opposed to expressly describes, that the wine is a spiced, autumnal beverage.

In sum, there are no genuine issues of material fact on the issue of Defendants' liability for infringement of DPW's rights in the HALLOWINE word mark for sales in Wisconsin and Illinois. The issues of priority and likelihood of confusion were already decided by the October 2008 TTAB order, and the parties had a fair opportunity to fully litigate the issues in that proceeding. Moreover, the undisputed facts support the TTAB decision and further establish the validity of the mark. Accordingly, DPW is entitled to partial summary judgment on these claims.

**C.     Recovery of Profits**

DPW also argues that it is entitled to recover profits from Defendants based on their infringing sales of IRW Hallowine in the states of Wisconsin and Illinois after the October 2008 TTAB decision. DPW contends that it is owed more than $508,864.26 plus an accounting for any additional sales occurring after December 2012. In support of its position, DPW states that Defendants have been knowingly and deliberately infringing on DPW's HALLOWINE mark since the TTAB ruling by their continuing and expanded use of the mark "as if the TTAB proceeding never happened."

Indeed, as noted above, Kane testified that he learned about the TTAB ruling shortly after it was issued, but that IRW made no changes to its labeling of its Hallowine product, made no changes to its sales channels for the Hallowine product, and only modified where IRW sold its Hallowine product after DPW applied for federal registered trademarks in March 2011. (Liro Decl. Ex. C, Kane Dep. 143-47, ECF No. 30.) Although IRW conducted test marketing in 2009 or 2010 to try the names "Hallowine," "Halloween Wine," and "Harvest Wine," it concluded that "Hallowine" was preferred by customers. (*Id.* at 46-50.) IRW's sales of Hallowine to retailers and distributors, almost all of which are in Illinois, has expanded significantly between 2008 and 2012. (Liro Decl. Ex. B 2-5, ECF No. 30.) Defendants have admitted that after the TTAB decision,

> IRW continued to use the HALLOWINE mark and produce, market and sell IRW's HALLOWINE product. Mr. Kane on behalf of IRW was under the assumption that IRW could continue to produce and sell IRW's HALLOWINE product and use the HALLOWINE mark without any objection by DPW due to its inaction (e.g. failure to initiate an infringement action) and silence.

(Defs. Statement of Proposed Material Facts ¶ 9, ECF No. 39.) Defendants emphasize that they received no communications "indicating that DPW was of the opinion that IRW's continued use of the HALLOWINE mark on its product was infringing on DPW's marks or otherwise inappropriate." (*Id.* ¶ 10.) This, despite the fact that Defendants had received a clear determination that they were infringing on DPW's HALLOWINE word mark in the form of the TTAB ruling, which Defendants did not appeal. Likewise, Defendants state that "[a]t all times pertinent to this matter, including before *and after* the TTAB decision until the present" IRW continued to sell and advertise their HALLOWINE product on IRW's website. Additionally, Defendants obtained an Internet domain registration for the domain "www.hallowine.org" domain name in May 2012.

16

Subject to the principles of equity, the Lanham Act "allows an award of three nonexclusive monetary remedies: (1) recovery of profits; (2) damages sustained by the plaintiff; and (3) costs of the action." *Sands*, 34 F.3d at 1347 (citing 15 U.S.C. § 1117). Section 1117 provides that the court must assess profits and damages. "In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed." § 1117. The defendant bears the burden to show which portions of its gross income were not attributable to its infringing uses. *WMS Gaming Inc. v. WPC Prods. Ltd.*, 542 F.3d 601, 608 (7th Cir. 2008) ("[W]hen a trademark plaintiff offers evidence of infringing sales and the infringer fails to carry its statutory burden to offer evidence of deductions, the plaintiff's entitlement to profits under the Lanham Act is equal to the infringer's gross sales."). "There may well be a windfall to the trade-mark owner where it is impossible to isolate the profits which are attributable to the use of the infringing mark. But to hold otherwise would give the windfall to the wrongdoer." *Mishawaka Rubber & Woolen Mfg. Co. v. S.S. Kresge Co.*, 316 U.S. 203, 206-07 (1942).

Here, DPW has established through undisputed invoices and sales records that Defendants' sales of their Hallowine product to Wisconsin and Illinois totaled $508,864.26 from October 21, 2008 to December 2012. Defendants have provided no evidence of costs or deductions, and Kane admitted that he had never calculated the production cost of IRW's Hallowine product and was unable to ascertain the elements of those costs. Therefore, Defendants have failed to meet their burden to show which portions of its sales were not attributable to their infringing use or should otherwise be deducted. Accordingly, DPW is entitled to an award amounting to Defendants' total revenue from its infringing sales amounting to $508,864.26.

17

## CONCLUSION

Based on the foregoing, DPW's motion for partial summary judgment is **GRANTED**. In addition, Defendants' motion to seal (ECF No. 44) is **DENIED** and the Clerk is directed to strike the April 9, 2013 Pollman deposition (ECF No. 49) from the record. Summary judgment shall be granted in DPW's favor as to all of Defendants' affirmative defenses, as well as its claims for trademark infringement of its rights in the HALLOWINE word mark under § 1125(a) and state common law. DPW is entitled to recover Defendants' profits for infringing sales in the amount of $508,864.26.

Dated this 14th day of June, 2013.

s/ William C. Griesbach
William C. Griesbach, Chief Judge
United States District Court