UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

C&N CORPORATION d/b/a
DOOR PENINSULA WINERY,

        Plaintiff,

     v.                                                 Case No. 12-C-0257

GREGORY KANE and
ILLINOIS RIVER WINERY, INC.,

        Defendants.

---

### DECISION AND ORDER GRANTING PLAINTIFF'S MOTION
### FOR PERMANENT INJUNCTION

---

      This case arises out of a dispute over infringement by Defendants Gregory Kane and Illinois River Winery, Inc. of trademark rights held by Plaintiff C&N Corporation d/b/a Door Peninsula Winery in selling a spiced wine called "Hallowine." After partial summary judgment in its favor on infringement of Plaintiff's HALLOWINE word mark, the remaining claims were dismissed without prejudice based on the stipulation of the parties.

      This matter is now before the Court on two motions brought by Plaintiff. First, Plaintiff moves a permanent injunction to enjoin further infringement of Plaintiff's HALLOWINE word mark by Defendants. Second, Plaintiff moves for an entry of final judgment as to claims resolved at summary judgment pursuant to Fed. R. Civ. P. 54(b), which will be dealt with separately. For the reasons that follow, Plaintiff's motion for permanent injunction will be granted.

## BACKGROUND

Plaintiff, a winery located in Door County, Wisconsin, sells a spiced apple wine called Hallowine. It began selling its Hallowine product in Wisconsin and Illinois in 1998. Defendants began selling a spiced apple wine under the name Hallowine at some point after 2003. On March 20, 2006, Defendants submitted an application to the U.S. Patent and Trademark Office (PTO) for federal registration of the word mark HALLOWINE. Upon learning of the application, Plaintiff initiated an opposition proceeding on December 21, 2006.

On October 21, 2008, the PTO Trademark Trial and Appeal Board (TTAB) issued a decision in the opposition proceeding granting Plaintiff's motion for summary judgment, sustaining the opposition and refusing Defendants' application for registration. The TTAB ruling found no genuine dispute that Plaintiff had priority in the HALLOWINE word mark and that there was a likelihood of confusion between Plaintiff's use of the HALLOWINE mark on its wine product and Defendants' use of the same mark on their wine product. Defendants did not appeal.

Following the October 2008 TTAB ruling, Plaintiff sought federal registration of the HALLOWINE word mark with the PTO but abandoned its efforts on January 18, 2011. In March 2011, Plaintiff applied for and obtained federal registration of related design plus words, letters, and/or numbers marks. Thereafter, Plaintiff filed the present lawsuit against Defendants on March 16, 2012, alleging infringement on its rights in trade dress and trademarks, including HALLOWINE and DOOR COUNTY HALLOWINE.

I granted summary judgment in Plaintiff's favor as to all of Defendants' affirmative defenses as Defendants failed to offer sufficient evidence to allow a reasonable jury to find in Defendants' favor on any of the affirmative defenses. (Dkt. 54 at 7–10.) I further granted summary judgment

2

in Plaintiff's favor on its claims for trademark infringement of its rights in the HALLOWINE word mark under 15 U.S.C. § 1125(a) and state common law because the TTAB ruling on priority and likelihood of confusion was entitled to preclusive effect and Plaintiff's unregistered HALLOWINE mark was protectable. (*Id.* at 11–15.) I also ordered that Plaintiff was entitled to recover Defendants' profits from infringing sales in the amount of $508,864.26. (*Id.* at 15–17.) The partial summary judgment order did not address Plaintiff's claims regarding infringement of the DOOR COUNTY HALLOWINE mark or trade dress of its product label and packaging.

After the partial summary judgment order, these remaining claims were dismissed without prejudice pursuant to the stipulation of the parties. (Dkt. 77.) These dismissed claims included Plaintiff's claims for infringement of its federally registered trademarks (U.S. Trademark Registration Nos. 4,041,256; 4,041,257; and 4,041,258), along with Plaintiff's state law and §1125(a) claims involving Plaintiff's trademark and trade dress rights in the product label and product packaging as a whole. After unsuccessful mediation, Plaintiff's motion for permanent injunction of Defendants' infringement of Plaintiff's HALLOWINE word mark followed.

**LEGAL STANDARD**

Under the Lanham Act, courts are authorized "to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable." 15 U.S.C. § 1116. To obtain permanent injunctive relief, a plaintiff must satisfy the following four factors: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would

3

not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).

## ANALYSIS

As an initial matter, Defendants argue at length that the Declaration by Robert Pollman should be disregarded as unsound under the Federal Rules of Evidence. (Def. Br. at 2–4, Dkt. 89.) Defendants' arguments on this point are not without merit, as it appears that some portions of the declaration are not based on personal knowledge or appear to be hearsay within hearsay.[1] As a result, I will not consider the portions of the Pollman Declaration that attempt to convey information from the sales staff to Pollman, (Pollman Decl. at ¶¶ 7–9, Dkt. 84), as these examples of possible actual confusion are not within his personal knowledge.

However, the November 1, 2010 email and the related newspaper article are within Pollman's personal knowledge. Further, these statements are not hearsay as they are not offered to prove the truth of the matter asserted within the email or article. Fed. R. Evid. 801(c)(2). Rather, they are offered to demonstrate the actual confusion between Plaintiff's and Defendants' products. Nor can Defendants attack their own interrogatory responses that "[s]everal stores have contacted Gregory Kane of IRW and indicated that they thought they had purchased IRW's HALLOWINE and to their disappointment had purchased Plaintiff's product instead." (Pl. Br. at 3, Dkt. 82.) Finally, even if the Pollman Declaration is ignored in its entirety, the Declaration of Wade Weiland

---

[1]To the extent Defendants argue that the Pollman Declaration should be excluded because the declaration itself is a hearsay statement, their argument is not well-taken. Indeed, any declaration is an out-of-court statement offered to prove the truth of the matter asserted. But a declaration may still be considered in support of a motion for permanent injunction.

4

and the attached exhibits present sound evidence of both actual confusion and Defendants' continued use of the HALLOWINE mark. (Weiland Decl., Dkt. 93; Weiland Decl., Ex. A, Dkt. 93-1; Weiland Decl., Ex. B, Dkt. 93-2; Weiland Decl., Ex. C, Dkt. 93-3.) Accordingly, the Court rejects Defendants' argument that the motion for permanent injunction should be denied because there is no evidentiary foundation for it.

### A. Irreparable Injury and Inadequate Remedy

Moving to the actual analysis for granting a permanent injunction, a party seeking a permanent injunction must demonstrate that it has suffered an irreparable injury and that remedies available at law, such as monetary damages, are inadequate to compensate for that injury. *eBay Inc.*, 547 U.S. at 391. Although considered distinct factors, the inquiries into irreparable injury and inadequate remedy are closely related under the facts of this case.

Plaintiff asserts that its irreparable injury is the damage to and loss of control of Plaintiff's goodwill that results from Defendants' infringement of Plaintiff's rights in the HALLOWINE mark. (Pl. Br. at 2–4, Dkt. 83.) The injury is established, according to Plaintiff, as a result of the summary judgment order, which found that Defendants' infringed on Plaintiff's HALLOWINE mark, as well as its evidence of continuing infringement following the order for summary judgment. (Pollman Decl. at ¶¶ 3–5, Dkt. 84; Pollman Decl., Ex. A, Dkt. 84-1; Weiland Decl. at ¶¶ 2–5, Dkt. 93; Weiland Decl., Ex. A, Dkt. 93-1; Weiland Decl., Ex. B, Dkt. 93-2; Weiland Decl., Ex. C, Dkt. 93-3.) Plaintiff further contends that the remedies at law are inadequate to compensate for the injury to its goodwill.

5

Plaintiff's arguments are strongly supported by case law. The Seventh Circuit has "clearly and repeatedly held that damage to a trademark holder's goodwill can constitute irreparable injury for which the trademark owner has no adequate legal remedy." *Re/Max North Cent., Inc. v. Cook*, 272 F.3d 424, 432 (7th Cir. 2001) (citing *Eli Lilly & Co. v. Natural Answers, Inc.*, 233 F.3d 456, 469 (7th Cir. 2000); *Meridian Mut. Ins. Co. V. Meridian Ins. Group, Inc.*, 128 F.3d 1111, 1114 (7th Cir. 1997); *Wesley–Jessen Division of Schering Corp.*, 698 F.2d 862, 867 (7th Cir. 1983)). "The most corrosive and irreparable harm attributable to trademark infringement is the inability of the victim to control the nature and quality of the defendants' goods." *Int'l Kennel Club of Chicago, Inc. v. Mighty Star, Inc.*, 846 F.2d 1079, 1092 (7th Cir. 1988). Defendants' assertions that Plaintiff cannot prove Defendants' use of the HALLOWINE mark diminished Plaintiff's goodwill are misplaced. Plaintiff does not have to demonstrate a tangible business loss from this injury. It does not matter if Defendants' product is of such high quality that it improved Plaintiff's goodwill because Plaintiff "can properly insist that its reputation should not be imperiled by the acts of another." *Id.* When Defendants use the HALLOWINE mark, Plaintiff has no quality control over the goods Defendants produce or the potential harm to Plaintiff's goodwill—this loss of control is the irreparable harm that cannot be adequately compensated by remedies available at law.

Defendants present two additional arguments related to this inquiry.[2] First, Defendants assert that Plaintiff cannot show it has suffered an irreparable injury merely because it has not demonstrated "actual confusion." (Def. Br. at 4–6, Dkt. 89.) Defendants cite to no legal authority

---

[2] Defendants also suggest at various points that it is "disingenuous" for Plaintiff's to pursue an injunction when other entities allegedly produce and market a spiced wine that infringes on the HALLOWINE mark. (Def. Br. at 5–7, Dkt. 89.) Because this apparently novel theory is not supported by any case law and is irrelevant to test for a permanent injunction of Defendants' infringement of the HALLOWINE mark, it is summarily rejected.

6

for this proposition, and the Court has found none. While it is certainly true that evidence of actual confusion would demonstrate trademark infringement and, accordingly, create an irreparable injury to the trademark holder's goodwill, actual confusion is not required to show infringement. Thus, even if I agreed that Plaintiff has not demonstrated actual confusion, it would not prevent injunctive relief.

Second, Defendants argue that injunctive relief is not proper because Defendants have "wholly discontinued utilizing the HALLOWINE mark in association with any of its products, marketing, etc." (Def. Br. At 6, Dkt. 89.) Defendants discontinued this use "as of the date of the issuance of the Partial Summary Judgment." (*Id.* at 7.) Plaintiff's reply, however, asserts that Defendants continued to use the HALLOWINE mark as recently as August 28–29, 2013 in various respects. (Pl. Reply at 3–4, Dkt. 92; Weiland Decl. at ¶¶ 3–5, Dkt. 93; Weiland Decl., Ex. A, Dkt. 93-1; Weiland Decl., Ex. B, Dkt. 93-2; Weiland Decl., Ex. C, Dkt. 93-3.) These are obviously not consistent positions: Defendants cannot have "wholly discontinued" use of the HALLOWINE mark as of June 14, 2013 (the date of summary judgment) and Plaintiff identify Defendants' use of the mark in late August 2013.

Regardless, even accepting Defendants' averments that they "wholly discontinued" use of the mark, their argument is without legal merit. "It is settled that an action for an injunction does not become moot merely because the conduct complained of has terminated, if there is a possibility of recurrence, since otherwise the defendants would be free to return to (their) old ways." *Allee v. Medrano*, 416 U.S. 802, 811–12 (1974) (internal quotation marks omitted); *see also Vincent v. City Colleges of Chicago*, 485 F.3d 919, 925 (7th Cir. 2007) ("Voluntary cessation of unlawful activity does not moot every request for prospective relief; the court must decide whether the complained-of

7

conduct may be resumed.") (citing *United States v. W.T. Grant Co.*, 345 U.S. 629 (1953); *United States v. Raymond*, 228 F.3d 804, 813–15 (7th Cir. 2000)). Given the ease with which Defendants could restart use of the HALLOWINE mark (assuming they presently ceased all use), recurrence is sufficiently likely to justify permanent injunctive relief.

Plaintiff has demonstrated that Defendants' infringement, based on the order for partial summary judgment and the evidence of continued infringement after that order, is an irreparable injury to Plaintiff's goodwill. Accordingly, Plaintiff's irreparable injury cannot be adequately compensated by remedies at law and injunctive relief is appropriate.

### B. Balance of Hardships

Considering the balance of hardships, a permanent injunction is unlikely to place a significant burden on Defendants. First, it will not force Defendants out of business, but rather require Defendant to cease using the HALLOWINE mark. Second, as Defendant repeats through its brief, they have already ceased use of the HALLOWINE mark, suggesting that compliance with a permanent injunction will cost them nothing. Plaintiff, on the other hand, asserts it has a strong interest in its mark and the associated goodwill. Nothing in the record disputes that assertion. Thus I conclude that an injunction protects Plaintiff from irreparable injury while simply requiring Defendants to do something they claim to have already done.

### C. Public Interest

Finally, the record contains no evidence that the injunction harms the public interest. Based on the record, enjoining Defendants' infringement on the HALLOWINE mark would likely result

8

in decreased confusion and mistake for consumers, which is one of the goals of the Lanham Act. *Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189, 198 (1985) ("The Lanham Act provides national protection of trademarks in order … to protect the ability of consumers to distinguish among competing producers."); *Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 855 n.14 (1982) ("At the same time, the infringer deprives consumers of their ability to distinguish among the goods of competing manufacturers.") (citing H.R. Rep. No. 76-944, at 3 (1939)); *see also Re/Max*, 272 F.3d at 433 (recognizing that the public "has an interest in knowing with whom they do business"). Defendants' assertion that injunctive relief is not appropriate because it will not remedy confusion between Plaintiff's product and other users of the HALLOWINE mark is not supported by any case law. Moreover, whether other entities, which are not involved in this case, infringe on Plaintiff's trademark is not relevant to this case. While this permanent injunction may not allow the public to distinguish between other Halloween-themed wine products and Plaintiff's product, the public interest will benefit from being able to distinguish between the products of the parties actually before the Court.

## CONCLUSION

Plaintiff's have demonstrated that it has suffered an irreparable injury to its goodwill that cannot be compensated by remedies at law. Further, Defendants will experience little, if any, hardship in complying with the injunction, as it claims to have already discontinued their infringement of the HALLOWINE mark. Finally, the public will benefit from the injunction because it will allow consumers to know with whom they do business. Based on the foregoing, Plaintiff's motion for permanent injunction is **GRANTED**.

9

**IT IS THEREFORE ORDERED** that Gregory Kane and Illinois River Winery, Inc. their officers, agents, servants, employees, attorneys, and all other persons who are in active concert or participation with them, who receive actual notice of this Order by personal service or otherwise, are permanently enjoined and restrained from manufacturing, advertising, marketing, promoting, offering to sell, and/or selling wine that uses, copies, or misappropriates the HALLOWINE mark or other existing or future names or designs that are not more than a colorable variation of the HALLOWINE mark in or into the states of Illinois and Wisconsin, whether such use is as, on, in, or in connection with any trademark, service mark, trade name, logo, design, Internet use, website, domain name, metatags, advertising, promotions, solicitations, commercial exploitation, television, web-based or any other program, or any product or service, or otherwise, without express authorization or license from C&N Corporation d/b/a/ Door Peninsula Winery.

**IT IS FURTHER ORDERED** that Gregory Kane and Illinois River Winery are further ordered to provide a copy of this Injunction Order to all distributors of their products in Illinois and/or Wisconsin within ten (10) days.

Dated this __12th__ day of November, 2013.

                                                s/ William C. Griesbach
                                                William C. Griesbach, Chief Judge
                                                United States District Court