UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

C&N CORPORATION d/b/a
DOOR PENINSULA WINERY,

        Plaintiff,

    v.                                      Case No. 12-CV-257

GREGORY KANE and
ILLINOIS RIVER WINERY INC.,

        Defendants.

## DECISION AND ORDER GRANTING MOTION FOR CONTEMPT

This previously closed action for trademark infringement is again before the court on the motion of Plaintiff C&N Corporation d/b/a Door Peninsula Winery (DPW), requesting that Defendants Illinois River Winery Inc. (IRW) and its owner, Gregory Kane, be held in contempt for violating the permanent injunction entered as part of the final judgment in the matter. On June 14, 2013, the court granted DPW's motion for partial summary judgment, ruling in favor of DPW on its claims for trademark infringement of its rights in the HALLOWINE word mark under section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and state common law. On November 12, 2013, the court granted DPW's motion for a permanent injunction to enjoin further infringement of its HALLOWINE mark by the defendants. The court entered a judgment to that effect, as explained in more detail below, and the judgment was affirmed on appeal. In the motion now before the court, DPW submits that the defendants are clearly violating the terms of the permanent injunction by selling wine essentially called "Hallow Wine." For the reasons that follow, DPW's motion will be granted.

## BACKGROUND

The facts before the Court when it granted DPW's motion for partial summary judgment on its claim that the defendants were infringing plaintiff's HALLOWINE mark are stated in the Court's prior order. (ECF No. 54.) In short, DPW and IRW are wineries that each sold Halloween-themed wine called "Hallowine." DPW has been selling and distributing its Hallowine in Wisconsin and Illinois since 1998. IRW began selling wine in 2003 and began selling its "Hallowine" some time thereafter. Aside from online sales, which are comparatively small, IRW sold its Hallowine in Illinois.

The parties' conflict first surfaced in 2006 when IRW submitted an application to the U.S. Patent and Trademark Office for federal registration of the word mark HALLOWINE, and DPW, upon learning of IRW's application, initiated an opposition proceeding. The PTO Trademark Trial and Appeal Board (TTAB) issued a decision in that proceeding in 2008 in which it ruled that DPW had priority in the HALLOWINE word mark and that there was a likelihood of confusion between DPW's use of the HALLOWINE mark on its wine and IRW's use of the same mark on its wine. IRW did not appeal the TTAB ruling.

After DPW filed this action against IRW and its president, Gregory Kane, for trademark infringement and other claims, DPW moved for partial summary judgment on several issues including the trademark infringement claims based on the HALLOWINE mark. This claim required showing that HALLOWINE was a protectable trademark and that IRW's use of the same word was likely to cause confusion among consumers. Because TTAB had already ruled on the second issue, the court held that IRW was collaterally estopped from arguing its mark was not likely to confuse consumers. And because the court concluded that the HALLOWINE mark was a protectable

2

trademark (that had been presumed in the TTAB proceedings and not contested by IRW in this action), the court concluded that the defendants were liable for infringement. The basis of the court's ruling on the uncontested protectability issue was that HALLOWINE is a valid "suggestive" mark, as opposed to a mere "descriptive" mark, because it is a play on words—HALLOWINE combines the words "Halloween" and "wine" in a way that suggests, as opposed to directly describes, that the wine is a spiced, autumnal beverage. (ECF No. 54 at 14–15.) The court also ordered that DPW was entitled to recover all of the revenue IRW received from its infringing sales in the amount of $508,864.26 under 15 U.S.C. § 1117 because IRW failed to offer any evidence of its own costs of production. (*Id.* at 15–17.)

After the parties agreed on dismissal without prejudice of DPW's other claims, DPW sought a permanent injunction and a final judgment. On November 13, 2013, the Court entered a judgment that included the following permanent injunction:

> IT IS FURTHER ORDERED AND ADJUDGED that Gregory Kane and Illinois River Winery, Inc. their officers, agents, servants, employees, attorneys, and all other persons who are in active concert or participation with them, who receive actual notice of this Order by personal service or otherwise, *are permanently enjoined and restrained from manufacturing, advertising, marketing, promoting, offering to sell, and/or selling wine that uses, copies, or misappropriates the HALLOWINE mark or other existing or future names or designs that are not more than a colorable variation of the HALLOWINE mark in or into the states of Illinois and Wisconsin*, whether such use is as, on, in, or in connection with any trademark, service mark, trade name, logo, design, Internet use, website, domain name, metatags, advertising, promotions, solicitations, commercial exploitation, television, web-based or any other program, or any product or service, or otherwise, without express authorization or license from C&N Corporation d/b/a/ Door Peninsula Winery.

(ECF No. 96 at 1) (emphasis added). The judgment also reflected the order that DPW was entitled to recover IRW's profits for infringing sales in the amount of $508,864.26. (*Id.*)

3

On appeal before the Seventh Circuit, IRW raised three issues. It argued (1) Kane should not be liable for damages in his individual capacity; (2) damages incurred before March 16, 2012 were barred by the applicable statute of limitations; and (3) "Hallowine" is not a protectable mark. *C&N Corporation v. Gregory Kane et al.*, No. 13-3786, slip op. at 3 (7th Cir. June 24, 2014) (ECF No. 115-1). The Seventh Circuit concluded that none of the arguments had been made to this Court and that the arguments had therefore been waived.

On February 28, 2014, while the case was on appeal, IRW filed for bankruptcy. On February 23, 2015, after the appeal was decided, IRW and Kane filed a malpractice action against the law firm that represented them both in this court and on appeal. The malpractice case was settled by the firm's professional liability insurer subject to a settlement agreement entered into between IRW/Kane and DPW. The agreement, executed March 17, 2015, included the following terms: IRW would seek dismissal of the bankruptcy proceeding; IRW's former counsel would pay DPW $250,000 in full satisfaction of the monetary relief granted in the judgment; IRW would abandon the use of any shade of orange on their wine bottles for any autumn-themed or Halloween-themed wine; IRW would also abandon the use of or depiction of bats, jack-o-lanterns and black cats on any such wine; the parties released any claims related to the trademark action, the malpractice action or the bankruptcy action; and finally, if either party had any dispute regarding compliance with the agreement, that the complaining party would be required to notify the other party of the issue in writing, would work in good faith to resolve the issue, and would wait at least 14 days after providing such notice before seeking action from any court or arbitrator. (ECF No. 129-2.) On April 21, 2015, as specified in the agreement and upon payment of $250,000 by the insurer of IRW's former counsel, DPW filed a satisfaction of judgment stating that the money judgment entered in this

4

case against IRW and Kane had been fully satisfied, but that the injunction "remains in full force and effect." (ECF No. 116.)

On October 2, 2015, DPW filed a motion for contempt and a motion for a temporary restraining order. (ECF Nos. 118 & 120). The motions are supported by three declarations—two from distributor-representatives who know about the permanent injunction and have seen allegedly violating product of IRW's on store shelves in 2015; the other declaration was submitted by DPW's chief operating officer, who explained that IRW continued to sell wine called "Hallow" or "Hallow Wine" that confused customers. IRW was selling the following (yellow) bottle in 2015 and the following (orange) bottle in 2014:



The label on the 2015 bottle includes, in three lines one on top of the other, the word "Hallow" in large print, the words "Apple/Pumpkin spiced" in small print, and the word "Wine" in medium-sized

5

print. The label on the 2014 label includes the word "Hallow" with the words "Apple/Pumpkin wine with autumn spices" in smaller print below. The color change from 2014 to 2015 (orange to yellow) and changes to the graphics above the words (from bats, jack-o-lanterns and black cats to crows, a regular pumpkin and no cat) reflect changes to the label IRW incorporated in response to the March 2015 settlement agreement.

At the October 20, 2015 hearing on DPW's motion Mr. Kane was called to testify regarding his intent and efforts to comply with the terms of the injunction. Mr. Kane testified that in 2014, IRW began selling wine under the name "Hallow," which was a shortened version of the word "Halloween," which is what IRW had called its wine since some time after this action was commenced. Kane testified that the word "Wine" was then added to the label in 2015 based on concern that customers did not know that the product contained alcohol. Kane testified that the word Wine was smaller than the word Hallow to try to distinguish, from the perspective of a customer viewing the product while holding it in his or her hand, the "Hallow" name from DPW's Hallowine. He testified that the words "Apple/Pumpkin spiced" were also interposed between the words Hallow and Wine for the same purpose, and that IRW had also changed the composition of the wine itself (removing cinnamon and nutmeg) to try to distinguish its wine from DPW's.

Kane also testified about conversations he had with his former intellectual property counsel, i.e., the attorneys he had sued for malpractice, about alternative non-infringing names for IRW's Halloween-themed wine. Kane suggested initially that his former attorney had advised him that the changes IRW would ultimately use would "clearly not violate" the HALLOWINE work mark. He later acknowledged on cross-examination, however, that he had talked to his former attorney about using the name "Halloween," but not the alternative name "Hallow Wine." Kane also testified that

6

the intent with the March 2015 settlement agreement was that all issues between these parties would be subject to the notification provision so that the parties would have an opportunity to address any issues before resorting to formal legal proceedings.

**ANALYSIS**

**A. Settlement Agreement**

As an initial matter, the defendants argue that DPW violated the notice provision of the settlement agreement by filing the motion for contempt and motion for a TRO immediately upon learning of IRW's continued infringement without providing 14 days' notice. The pertinent provision of the settlement agreement states: "The parties agree that in the event of a potential dispute regarding compliance with the terms of this Agreement, the party who contends that there is not compliance will notify the other party of the issue in writing, will work in good faith to discuss and resolve the issue, and will wait at least 14 days after providing this written notification before seeking action from any court or arbitrator." (ECF No. 129-2 at 5.)

This argument fails because on its face the notice provision only applies to disputes "regarding compliance with the terms of this Agreement." The settlement agreement only addressed the monetary aspect of the judgment and the undecided claims in the trademark case. These consisted of DPW's claims concerning trade dress that were dismissed without prejudice. While the settlement agreement resolved some of the disputes between the parties, it did not address the permanent injunction or the consequences of IRW's violating it in the future. Having prevailed in the court of appeals, DPW had no reason to compromise that aspect of the case. Accordingly, the agreement does not preclude DPW from seeking immediate relief in this Court for an alleged

7

violation of the terms of this Court's injunction. It follows that DPW did not violate the agreement by filing its motion without providing IRW 14 days notice and the defendants' motion for attorneys fees must be denied.

**B. Contempt**

"A district court has considerable latitude in how it goes about enforcing its own decrees in a contempt proceeding." *Rockwell Graphic Systems, Inc. v. DEV Industries, Inc.*, 91 F.3d 914, 920 (7th Cir. 1996). Moreover, "[i]t is well established that the protection of a trademark requires that a party once convicted of infringement or unfair competition should keep a safe distance from the margin line between compliance with the order and a violation." *World's Finest Chocolate, Inc. v. World Candies, Inc.*, 409 F. Supp. 840, 844 (N.D. Ill. 1976) (citing *Independent Nail & Packing Co. v. Stronghold Screw Products, Inc.*, 215 F.2d 434, 436 (7th Cir. 1954); *Broderick & Bascom Rope Co. v. Manoff*, 41 F.2d 353, 354 (6th Cir. 1930)). The standard in civil contempt proceedings is as follows:

> To prevail on a request for a contempt finding, the moving party must establish by clear and convincing evidence that (1) a court order sets forth an unambiguous command; (2) the alleged contemnor violated that command; (3) the violation was significant, meaning the alleged contemnor did not substantially comply with the order; and (4) the alleged contemnor failed to make a reasonable and diligent effort to comply.

*S.E.C. v. Hyatt*, 621 F.3d 687, 692 (7th Cir. 2010).

**1. Unambiguous command**

There appears to be no dispute here that the injunction provides an unambiguous command. IRW and Kane were adjudicated to have infringed DPW's trademark by selling wine called Hallowine. The permanent injunction was therefore entered enjoining and restraining IRW and Kane

8

from selling wine that "uses, copies, or misappropriates the HALLOWINE mark *or other existing or future names or designs that are not more than a colorable variation of the HALLOWINE mark* . . . ." One might argue that the phrase "colorable variation" is open to interpretation.[1] But it is common to employ such legal terms of art to provide notice of the acts to be restrained while avoiding so much specificity as to create loopholes and opportunities for evasion. *See Scandia Down Corp. v. Euroquilt, Inc.*, 772 F.2d 1423, 1431–32 (7th Cir. 1985) (rejecting argument that words "any colorable imitation" in preliminary injunction were too vague to support a finding of contempt). Thus, the first element is satisfied.

**2. Violation**

DPW submits that IRW has violated the terms of the injunction by selling wine called "Hallow" and "Hallow Wine" in 2014 and 2015. The question is whether each of these is "not more than a colorable variation of the HALLOWINE mark." If not (i.e., if the names are mere colorable variations), IRW violated the terms of the injunction.

According to federal copyright law, "[t]he term 'colorable imitation' includes any mark which so resembles a registered mark as to be likely to cause confusion or mistake or to deceive." 15 U.S.C. § 1127.[2] That a mark so resembles another mark as to likely cause confusion is the hallmark of trademark infringement law. Considering these fundamental principles of copyright law, it is abundantly clear that the effect of the injunction's terms is to require IRW to refrain from selling

---

[1] Defendants apparently do not argue that. (*See* Defs.' Opp. at 7, ECF No. 134 at 11) ("Defendants submit that: 1. the court order was unambiguous . . . .").

[2] According to BLACK'S LAW DICTIONARY (10th ed. 2014), a "colorable alteration" or a "colorable deviation" is "[a] modification that effects no real or substantial change, but is made only to distinguish an invention or work from an existing patent or copyright . . . ."

9

wine called Hallowine or other substantially similar names that will also confuse customers.

Essentially, DPW's position is that customers have been and will continue to be confused by IRW's name "Hallow" when used in combination with the word "wine" for the same reason they were confused when IRW was using the word "Hallowine": the names are identical. DPW argues that IRW is not using more than a "colorable variation" of Hallowine because it simply separated the word into its phonetically equivalent components. While the two names may not look the same on the respective labels for the wine products they identify, they sound exactly the same when spoken. A customer who asks for a bottle of Hallowine and is given a bottle of Hallow Wine will not know the difference. Any advertising DPW does for its product is just as likely to increase sales for IRW's product and vice versa. Likewise, any customer complaints about IRW's Hallow Wine are likely to damage the reputation of DPW's Hallowine. These are precisely the harms that the Lanham Act and the common law protecting trademarks are intended to prevent.

IRW's argument in response is to primarily point to the changes it made in the trade dress for its product. IRW notes the visual dissimilarities in its labels and DPW's, including the colors and the graphics used and the letters of the words themselves. The font style is different and IRW's letter "W" in Hallow and Wine is a caricature of a ghoul. Defendants argue that DPW "has presented no evidence that the consumer [would be] confused when viewing the . . . marks, side by side." (Defs.' Opp. 9.) But the injunction IRW is accused of violating enjoined IRW and Kane from using the Hallowine mark or other names that "are not more than a colorable variation of the Hallowine mark." It did not address the trade dress that the parties later addressed in their settlement agreement.

10

IRW also notes that the word "Hallow" is simply an abbreviation for Halloween. DPW concedes it has no intellectual property rights in the word "Halloween." IRW therefore suggests that DPW cannot object to its naming its wine "Hallow." The word "Wine" was included, IRW contends, simply because the federal government requires it to be included on the label so that people know the beverage contains alcohol. IRW also argues that the word "Wine" was not simply separated from "Hallow" by a space, as DPW contends. Rather, the word is included in smaller font than Hallow and only after the words "Apple/Pumpkin spiced" were added in between. (Defs.' Opp. 7.)

The argument is not persuasive. In fact, the fact that IRW changed the name from "Halloween Wine" to "Hallow" in 2014 is telling. IRW argues that the change was undertaken because the word Halloween has religious connotations to some people. It seems unlikely, however, that anyone in the market for a Halloween-themed wine would be put off because of the religious connotation of the word Halloween upon encountering a wine was called Halloween Wine. It seems far more likely that Defendants changed the name to Hallow and then the next year, to Hallow Wine for the same reason it admitted it had previously rejected other alternatives: "it concluded that 'Hallowine' was preferred by customers." (ECF No 54 at 16.) IRW wanted to move back toward the tried and true name it had used in the past—Hallowine. In other words, IRW does not simply seek to trade off of the word Halloween; it specifically intends to trade off of the pun that combines the holiday with the product.

Additionally, I find the inclusion of the words "Apple/Pumpkin spiced" on the label unlikely to stave off customer confusion. It is highly unlikely that customers would refer to IRW's 2015 product as "Hallow Apple/Pumpkin spiced Wine." It is much more likely that anyone reading that

11

bottle would call the wine "Hallow Wine," which is phonetically identical to the DPW's trade mark. And although the word "Wine" was not as prominent on the 2014 label, the risk of confusion is the same. The reality is that there is a very high probability that a customer would identify a wine called "Hallow" as "Hallow wine." In sum, I find that the use of the product name Hallow Wine on its wine product violates the injunction previously entered in this action.

### 3. Significant violation

Another way of saying that the contemnor's violation was significant would be to say that he did not substantially comply with the court order. Here, IRW did not substantially comply and therefore the violation was significant. It is important to view the likelihood-of-confusion issue in the proper context in this case. The question is not whether Defendants have non-frivolous arguments that their marks would not infringe DPW's mark in the first instance (i.e., because the marks do look different). Infringement in the first instance has already been decided. Thus, "[t]he due protection of trade-mark and similar rights requires that a competitive business, once convicted of unfair competition in a given particular, should thereafter be required to keep a safe distance away from the margin line—even if that requirement involves a handicap as compared with those who have not disqualified themselves." *Independent Nail & Packing Co.*, 215 F.2d at 436 (quotations omitted). Put another way, one adjudicated an infringer must keep a "safe distance" from the line between compliance with an injunction against further infringement and a violation. *See World's Finest Chocolate, Inc.*, 409 F. Supp. at 844. "A party who takes it upon himself to avoid the terms of a court order does so at his peril." *Id.*

Here, Defendants did not keep a "safe distance." Instead, Kane endeavored to get as close to the line as possible and, as explained above, he actually clearly crossed it. Given that Defendants

12

have already been adjudged to infringe the Hallowine mark, the court cannot find that the subsequent violation of the injunction's terms was insignificant.

### 4. Reasonable and diligent efforts to comply

A party need not willfully violate a court order to be found in civil contempt. *International Star Registry of Ill., Ltd. v. SLJ Group, Inc.*, 325 F. Supp. 2d 879, 883) (N.D. Ill. 2004) (citing *Commodity Futures Trading Comm'n v. Premex, Inc.*, 655 F.2d 779, 784 n.9 (7th Cir. 1981)). Rather, the standard is objective. A court will find a party in contempt "if it has not been reasonably diligent and energetic in attempting to accomplish what was ordered.'" *Id.* (quoting *Am. Fletcher Mortgage Co. v. Bass*, 688 F.2d 513, 517 (7th Cir. 1982)).

In this case, IRB's efforts were neither reasonable nor diligent. The unmistakable import of the words of the injunction was that the defendants were required to change the name of IRW's Halloween-themed wine. The defendants did not do so. To the extent that they did, their efforts do not reflect a good faith effort to comply with the injunction, but a conspicuous attempt, as DPW aptly describes it, to "outsmart" the injunction. And although Mr. Kane testified about the legal counsel he received with respect to alternative names for his wine, I find his testimony on the issue weak and ultimately unpersuasive on the question of the reasonableness of his conduct. Mr. Kane seemed to contradict himself by testifying or at least implying early on that his former attorneys had told him that the names he was using would "clearly not violate" the word mark HALLOWINE, and then later admitting on cross-examination that he had not talked to his former attorneys at all about the name "Hallow Wine," but only "Halloween Wine." Whether "Halloween Wine" would violate is an entirely different question, and not one germane to the issues about which Kane was testifying when he took the stand. Moreover, Mr. Kane's recollection of his conversations with the attorneys

13

who he later sued for malpractice was vague. He testified that the conversations took place in 2011 or 2012, long before the injunction was issued on November 13, 2013. Seeking an attorney's advice will not always be required to reasonably attempt to comply with a court order, of course, but where an injunction is issued restraining a defendant's actions and he is thinking about testing the boundaries of the injunction, talking to an attorney would be advisable.

In any event, the fact that Kane talked to his former attorneys about some variations of HALLOWINE long before the injunction was entered does not render his otherwise contemptuous conduct reasonable. Accordingly, I find IRW and Kane in contempt for violating the terms of the permanent injunction entered in the Court's November 13, 2013 judgment.

**C. Remedy**

As relief for the defendants' violation of the injunction, DPW requests the following: an order enjoining the defendants from continuing their violation of the permanent injunction and requiring the defendants to recall all infringing product from the shelves of IRW's distributors and retail outlets; an order that IRW disgorge all revenue from sales of the infringing product; and an award of attorneys fees for bringing the motions for contempt and for a temporary restraining order.

In response, the defendants argue that any monetary award arising out of DPW's motion for contempt should be based on actual profits, not revenue. The court is inclined to agree but it will be the defendants' burden to establish the costs of production that they claim should offset the gross revenue IRW received from the relevant sales. The defendants' claim that their per-bottle profit comes to a mere $0.47 will need evidentiary support.

The defendants also argue that no attorney fee award is appropriate because these proceedings could have been avoided if DPW had provided notice before going to court, as

14

Defendants argue was required by the settlement agreement. "Civil contempt sanctions are properly imposed for two reasons: to compel compliance with the court order and to compensate the complainant for losses caused by contemptuous actions." *Tranzact Techs., Inc. v. 2 Source Worldwide*, 406 F.3d 851, 855 (7th Cir. 2005). The contemptuous action here was selling product in violation of the terms of the injunction. The recall DPW requests is clearly required in order to stop the continuing violation and to avoid further confusion. Further, given that the Court found the notice provision in the settlement agreement to be inapplicable, an award of reasonable attorneys fees is entirely warranted because DPW had to bring the motions it did to obtain relief. *Id.* at 856 ("[I]t is within the trial court's discretion to award fees upon a finding of civil contempt."). Finally, disgorging of all profits from sales occurring in violation of the terms of the injunction is also appropriate.

## ORDER

**IT IS THEREFORE ORDERED** that DPW's motion for contempt (ECF No. 118) is **GRANTED**. Defendants violated the terms of the permanent injunction entered in this Court's November 13, 2013 judgment in this case by selling wine using names that are not more than a colorable variation of DPW's HALLOWINE mark.

**IT IS FURTHER ORDERED** that Defendants are **ENJOINED** from continuing their violation of the terms of the injunction as described herein.

**IT IS FURTHER ORDERED** that Defendants recall from their distributors and retail outlets all product using the name Hallow Wine.

15

**IT IS FURTHER ORDERED** that Defendants pay all profits from sales of infringing product in 2014 and 2015 to DPW.

**IT IS FURTHER ORDERED** that DPW's motion for a temporary restraining order (ECF No. 120) is **WITHDRAWN**.

**IT IS FURTHER ORDERED** that the defendants' motion for attorneys fees (ECF No. 135) is **DENIED**.

Dated this   23rd   day of October, 2015.

                                                    s/ William C. Griesbach
                                                    William C. Griesbach, Chief Judge
                                                    United States District Court